JUNIUS McKAY v. G. F. BULLARD.

(Filed 28 January, 1935.)

**1. Adverse Possession C b—Claimant must show not only possession but also that possession was adverse and under definite boundaries.**

> It is error for the court to direct the jury to answer the issue of adverse possession in favor of the party claiming by such adverse possession if the jury should find the facts as the evidence tends to show, merely upon uncontradicted evidence of thirty years possession, it being necessary for claimant to show by evidence that such possession was adverse and was under known and visible lines and boundaries. C. S., 425.

**2. Adverse Possession A f—**

> In order for possession to be hostile the possessor must exercise dominion by exclusive use of the land for purposes for which it is reasonably susceptible, and such occupancy must extend to the boundaries claimed.

EJECTMENT, tried at April Term, 1934, of BLADEN, before *Cranmer, J.* New trial.

Judgment for plaintiff; appeal by defendant.

*H. H. Clark for plaintiff appellee.*
*A. M. Moore for defendant appellant.*

Schenck, J.   The plaintiff alleged that he and the other heirs at law of R. L. McKay are the owners in fee and entitled to the possession of the following described lot or parcel of land, of which the defendant is in the unlawful possession, to wit: "In the town of Elizabethtown. Beginning at the northeast corner of the intersection of Queen and Poplar streets, and running thence as the east line of Poplar Street now north 22¼ east 3.18 chains (210 ft.) to an iron rod, a corner of lot; thence as line of that lot, now south 47¾ deg. east 3.18 (210 ft.) across the end of Cape Fear River bridge fill to an iron rod, now a large tree, a corner of ........ ....lot; thence a line of that lot south 22¼ west 3.18 chains to a piece of piping in the north line of Queen Street; thence as that line north 67¾ deg. west 3.8 chains to the beginning."

The third issue reads: "Are the plaintiffs the owners of and entitled to the possession of the lands described in the complaint?"—upon which his Honor instructed the jury: "If you find the facts to be, by the greater weight of the evidence, as the evidence tends to show, you will answer the issue 'Yes,' " which charge the defendant made the basis of an exceptive assignment of error.

The plaintiff, through his counsel, in response to an interrogation by the court, stated that the plaintiff claimed not by virtue of any deed or grant, but by "metes and bounds as described in the complaint," and introduced no deed or grant containing any description from which the land in controversy could be located.

Construing the evidence favorable to the plaintiff, the most it tends to show is that the father and mother of the plaintiff and the plaintiff and his brothers and sisters lived in a house on an half-acre tract of land on Queen and Poplar streets in the town of Elizabethtown, on the top of the hill near the Cape Fear River bridge, for more than thirty years, and that after the death of his parents the plaintiff rented the house to various families and that the plaintiff sold the sand on the land to a bridge construction company and the house was torn away in getting the sand.

There is no evidence of possession of the land except the occupancy of the house and the hauling of the sand; and no evidence as to what part of the land the sand was hauled from, except that the hauling caused the house to be torn down; and no evidence as to character of the land or the uses to which it was susceptible.   Not a witness could locate by name the streets mentioned in the description in the complaint.   The plaintiff himself, on cross-examination, testified: "I know where the lands begin but I don't know the names of the streets.   I don't know where any of the corners are since it was cut down."   The nearest approach to locating the streets was by the witness Sheron, who testified: "I am familiar with the description of the tract of land on Queen and Poplar streets, which I heard you read.   The place was

owned by R. L. McKay. I know when he lived on that tract of land."
. . . "He (the plaintiff) sold the sand and they tore the house
down." This witness, however, on cross-examination, when the description
contained in the complaint was read to him, said: "I don't recognize it."

Conceding, but not deciding, that the evidence establishes 30 years
possession of an one-half-acre tract of land on Queen and Poplar streets
in the town of Elizabethtown by the plaintiff and those under whom he
claimed, there was still left for the jury's determination the questions as
to whether such possession was adverse, and as to whether such possession
was held up to known and visible lines and boundaries, as required
by C. S., 425.

Adverse possession within the meaning of the law consists in actual
possession with intent to hold solely for the possessor to the exclusion of
others, and is denoted by the exercise of acts of dominion in making
the ordinary use and taking the ordinary profits of which the land is
susceptible. The possession must be as decided and notorious as the
nature of the land will permit and afford unequivocal indication to all
persons that the possessor is acting in the character of owner, *Locklear
v. Savage,* 159 N. C., 236, and this possession must be "ascertained and
identified under known and visible lines and boundaries," that is, the
physical occupation must be connected with the boundaries claimed.

A perusal of the evidence leads us to the conclusion that there was
error in the peremptory instruction of his Honor to the effect that the
evidence established that the thirty years possession of the plaintiff and
those under whom he claims was adverse and identified under known and
visible boundaries, and that this error entitles the defendant to a new
trial.

New trial.